IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND DIVISION

| | |
|---|---|
| BRIAN WALKER, JASON WALKER, AND ALL OTHERS SIMILARLY SITUATED UNDER 29 USC § 216(b), <br><br> *Plaintiffs*, <br> v. <br><br> BYRD OILFIELD SERVICES, LLC, MIKE BYRD MANAGEMENT, LLC, BPU AVIATION, LLC, KAY HIGHT, MIKE BYRD, AND CARY EPLEY, <br><br> *Defendants*. | Civil Action No. 7:16-cv-00313-RAJ |

## PLAINTIFF'S MOTION FOR NOTICE TO POTENTIAL PLAINTIFFS AND CONDITIONAL CERTIFICATION

/s/ *Jack Siegel*
J. DEREK BRAZIEL
Texas Bar No. 00793380
J. FORESTER
Texas Bar No. 24087532
LEE & BRAZIEL, L.L.P.
1801 N. Lamar St. Suite 325
Dallas, Texas 75202
(214) 749-1400 phone
(214) 749-1010 fax
www.overtimelawyer.com

JACK SIEGEL
*Co-Attorney in Charge*
Texas Bar No. 24070621
SIEGEL LAW GROUP PLLC
2820 McKinnon, Suite 5009
Dallas, Texas 75201
P: 214.790.4454
www.4overtimelawyer.com

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that on July 31, 2017, a copy of the foregoing document was sent to opposing counsel via the Western District of Texas' ECF system.

/s/ Jack Siegel_____
Jack Siegel

## CERTIFICATE OF CONFERENCE

Plaintiffs' counsel spoke with Defense Counsel and Defense Counsel provided that Defendants are opposed to the relief sought in this Motion.

/s/ Jack Siegel_____
Jack Siegel

I. **OVERVIEW**

This is **not** a motion for class certification brought under FED.R.CIV.P. 23. It **is** a motion brought pursuant to the Fair Labor Standards Act's ("FLSA") collective action provision. 29 U.S.C. § 216(b). In contrast to Rule 23 **class** actions, **collective** actions are **opt-in**—**not** opt-out. Unsurprisingly, the standard applied to conditional certification—requiring a showing that substantially situated people **exist**—is much more lenient than the Rule 23 certification standard.

Plaintiffs sued Defendants to recover unpaid overtime wages that Defendants failed to pay in accordance with the FLSA. Plaintiffs' Third Amended Complaint alleges the following:

- Defendants employ non-exempt workers, who regularly worked over 40 hours per week, to provide manual and technical labor to help provide casing and other services to Defendants' customers ("Non-Exempt Employees or "NEEs");

- Defendants do not pay NEEs a guaranteed salary, but instead pay them on a non-exempt basis, including on an hourly ("Hourly Pay") and/or piece rate ("Piece Rate Pay") basis;

- The Piece Rate Pay received by NEEs includes compensation paid on a per-foot-of-pipe laid and per assignment or per job basis for casing work;

- Defendants fail to track or count hours all worked by NEEs on tasks paid on a Piece Rate Pay basis, and as a result, fail to pay for all overtime hours worked by NEEs ("Uncounted Hours Policy" or "UHP") on that basis;

- Defendants **categorically** excluded **ALL Additional Pay**[1]—other than hourly and quantity of work pay for casing work—from the regular rate to calculate NEEs' overtime compensation ("OT Miscalculation Policy" or "OMP").

Plaintiffs support these allegations with sworn statements from **twelve** NEEs concerning the UHP and OMP ("Illegal Policies"). **Exhibits C-N.** The statements corroborate that Defendants subject all NEEs to the Illegal Policies that fail to pay for all overtime hours worked when NEEs receive Piece Rate Pay and overtime at the legally required rate when NEEs receive Additional Pay.

---

[1] "Additional Pay" includes without limitation performance, per diem, safety bonus, and non-discretionary bonus pay.

Plaintiffs' Motion for Notice & Conditional Certification                                                                      3

At this early stage in the case, over **thirty** NEEs have self-selected themselves as similarly situated and elected to join this suit, but other NEEs exist who still have no awareness of this suit or their rights to proceed in this forum. A Notice to Potential Plaintiffs will allow a limited group of Defendants' current and former NEEs to make an informed decision regarding whether to participate in this case. Although Plaintiffs will establish Defendants' FLSA violations at trial, the merits of the case are **not** at issue here. Rather, conditional certification is appropriate because Plaintiffs have met their "lenient" burden to show similarly situated NEEs exist.[2] Because recovery for Potential Plaintiffs erodes daily, the Court should authorize Notice as quickly as possible.[3]

## II.   FACTUAL BACKGROUND

### A.   Plaintiff Is Similarly Situated to Other CEs.

The twelve attached declarations demonstrate that a group of similarly situated NEEs exists that Defendants subjected to the uniform Illegal Policies that denied NNEs overtime (1) for all overtime hours worked when NEEs performed tasks paid on a Piece Rate Pay basis; and (2) at the legally required rate when NEEs received Additional Pay. **Exhibits C-N.** Defendants employ NEEs to perform non-exempt work, pay NEEs on a non-exempt basis, and subject NEEs to a schedule that requires regular overtime work. *Id.,* ¶¶ 1-2, 5-6. Defendants subject all NEEs to the (1) OMP that categorically excludes Additional Pay from the regular rate; and (2) UHP that fails to pay for all overtime hours worked. *Id..* ¶¶ 3-7. The declarations substantiate that Defendants subjected all NEEs to the uniform Illegal Policies that form the basis of Plaintiff's Complaint. *Id.*

---

[2] *See, e.g., Snively v. Peak Pressure Control, LLC*, No. 15-cv-134-RAJ-DC, 2016 WL 5791265 (observing lenient standard applicable at notice stage and conditionally certifying class of oilfield workers); *Fulton v. Bayou Well Services LLC*, No. 3:16-cv-474-N, 2016 WL 5377903, 2016 WL 5377903 (observing lenient standard applicable at notice stage and conditionally certifying class of oilfield workers); *Minyard v. Double D Tong*, __ F. Supp. 3d 00, No. 16-cv-313 ("Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class.") (citing to *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1214 (5th Cir. 1995).

[3] The FLSA statute of limitations runs from the date an individual opts into the case. Consequently, for former employees who are no longer being subjected to the illegal practice, every day without Notice is a day's pay they lose forever. Plaintiffs therefore request an expedited determination of this Motion.

B.     **Similarly Situated, Potential Opt-in Plaintiffs Exist**

Plaintiffs witnessed or discussed job duties and pay arrangements during their employment with other CEs. *Id.* ¶ 5-7. Plaintiffs acquired and possess knowledge that Defendants subjected all NEEs to the Illegal Policies that denied them overtime for all overtime hours worked and overtime at the legally required rate. *Id.* The declarants identify more individuals by name that would be interested in participating in this case, have expressed an interest, or are already doing so. *Id.* Plaintiffs have met the lenient standard for conditional certification by showing (1) the Illegal Pay Policies applicable to all NEEs and (2) the existence of other similarly situated NEEs.

III.    REQUEST FOR CONDITIONAL CERTIFICATION AND § 216(b) NOTICE

This Motion seeks conditional certification of and supervised notice to the following:

> All non-exempt workers employed by Defendants in the United States over the last three years who received Piece Rate Pay for casing work, or who received Additional Pay[4] that Defendants excluded from the regular rate to calculate overtime.

Plaintiffs have met their "minimal burden" to warrant Notice to the Potential Plaintiffs.[5]

A.     **The Law Favors Collective Actions and Authorizes the Court to Issue Notice to the Potential Opt-in Plaintiffs.**

FLSA plaintiffs may bring an action on behalf of all "other similarly situated employees."[6] The law favors collective actions because they benefit the judicial system by enabling the "efficient resolution in one proceeding of common issues of law and fact," and providing the chance to "lower individual costs to vindicate rights by the pooling of resources."[7] <u>Unlike</u> plaintiffs in a Rule 23 class action, Plaintiffs in an FLSA collective action must affirmatively opt-in to be covered by the

---

[4] "Additional Pay" specifically excludes hourly pay and quantity based pay for casing work, but includes all other pay received by CEs including non-discretionary bonus, safety bonus and truck allowance pay.

[5] *See e.g. Oliver v. Aegis Communications Group, Inc.*, No. 3:08-cv-828, 2008 WL 7483891, at *4 (N.D. Tex. 2008) ("Here, the Court finds that Plaintiffs have met their minimal burden of proof, and that conditional certification of the Plaintiff class is warranted.").

[6] 29 U.S.C. § 216(b).

[7] *Hoffmann-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989).

suit.[8] If an individual employee fails to opt-in by filing a written consent, he or she will not be bound by the outcome—favorable or not—and may bring a subsequent private action.[9]

Because the substantial benefits of FLSA collective actions "depend on employees receiving accurate and timely Notice concerning the pendency of the collective action," the FLSA grants the Court authority to manage the process of joining such employees in the action, including the power to authorize Notice, and monitor preparation and distribution of the Notice.[10] Court authorization of Notice serves the legitimate goal of "avoiding a multiplicity of duplicative suits and sets reasonable cutoff dates to expedite disposition of the action."[11] The Court is empowered and encouraged to issue Notice to Potential Plaintiffs and should do so in this case.

**B.    The Two-Stage Certification Process**

This Court uses the two-stage approach to conditional certification.[12] During the first stage, once the Court makes the preliminary determination that Potential Plaintiffs are similarly situated, the case proceeds as a collective action through discovery.[13] After certification, discovery becomes relevant to the case's merits and the second step in the collective action procedure.[14] At the second stage, the Court evaluates discovery-developed evidence to test the validity of its initial decision.[15]

Allowing early Notice and participation by opt-ins "assures that the full 'similarly situated' decision is informed, efficiently reached, and conclusive."[16] After opt-in period ends, the Court will

---

[8] 29 U.S.C. § 216(b); *LaChapelle v. Owens,-Illinois, Inc.*, 513 F.2d 286, 289 (5th Cir. 1975).
[9] *Equal Employment Opportunity Comm'n v. Pan Am World Airways, Inc*, 897 F.2d 1499, 1508 n.11 (9th Cir. 1990).
[10] *Hoffmann-La Roche*, 493 U.S. at 169-73 (1989) ("The broad remedial goal of the statute should be enforced to the full extent of its terms.").
[11] *Id.* at 172.
[12] *See e.g. Sandoval v. Carrco Painting Contractors*, No. 16-cv-159, 2016 WL 8674068, at *2 (W.D. Tex. October 24, 2016) (granting conditional certification based on application of two-stage approach).
[13] *Mooney*, 54 F.3d at 1214 (5th Cir. 1995).
[14] *Id.*
[15] *Id.*
[16] *Sperling v. Hoffmann-LaRoche Inc.*, 118 F.R.D. 392, 406 (D. N.J.), *aff'd*, 862 F.2d 439 (3d Cir. 1988), *aff'd*, 493 U.S. 165 (1989).

benefit by knowing the actual makeup of the collective action.[17]  Early Notice will help the Court manage this case by enabling it to "ascertain the contours of the action at the outset."[18]

**C.     Plaintiffs Become Entitled to Notice Upon a Minimal Showing That Plaintiffs Are Similarly Situated to Other Employees**

   **1.     The Standard for Notice and Conditional Certification is a "Lenient" One.**

Because the first step takes place prior to the completion of discovery, the Notice standard "is a lenient one"[19] that this District routinely applies to grant conditional certification.[20] Courts apply this low standard because imposing a stricter standard would unnecessarily hinder the development of collective actions and undermine the FLSA's "broad remedial goals."[21] Only at the **second stage**—occurring at the close of discovery—does a court make a "factual determination" as to whether the class members are similarly situated.[22] The first stage's lenient standard "typically results in 'conditional certification' of a representative class," to which Notice is sent.[23]

   **2.     Plaintiffs Need Only Make Substantial Allegations Supported by Sworn Statements at the Notice Stage.**

At the first stage of the two-stage process, the Court determines whether Plaintiffs and Potential Plaintiffs are "similarly situated" based on a complaint's allegations supported by sworn

---

[17] *Clarke v. Convergys Cust. Manag. Group*, 370 F. Supp. 2d 601, 605 (S.D. Tex. 2005) (Notice informs the original parties and the court of the number and identity of persons desiring to participate in the suit).

[18] *Hoffman-La Roche*, 493 U.S. at 172-73.

[19] *Mooney*, 54 F.3d at 1214;

[20] *See, e.g.*, *Bernal v. Vankar* Enterprises, No. SA-07-CA-695, 2008 WL 791963, at *3 (W.D. Tex. March 24, 2008) ("[t]he decision to conditionally certify a class at the Notice stage is lenient"); *Sandoval v. Carrco Painting Contractors*, No. 16-cv-159, 2016 WL 8674068, at *2 (W.D. Tex. October 24, 2016) (granting conditional certification based on application of two-stage approach).

[21] *Garner v. G.D. Searle*, 802 F. Supp. 418, 422 (M.D. Ala. 1991); *Sperling,* 118 F.R.D. at 407 ("[N]otice to absent class members need not await a conclusive finding of 'similar situations.'").

[22] *Mooney*, 54 F.3d at 1214.

[23] *Id.*

statements.[24] The record need only be "sufficiently developed . . . to allow court-facilitated Notice" based upon "substantial allegations"[25] or "some factual support."[26]

In the present case, the Third Amended Complaint ("Complaint") alleges Plaintiffs performed non-exempt job duties, regularly worked over 40 hours per week, and were subjected to the same Illegal Policies. ECF 51-1, ¶¶ 1-4, 25-29. The Complaint alleges other NEEs performed similar work and did not receive overtime for all overtime hours worked or at the legally required rate. *Id.*, ¶¶ 22-25. The sworn statements from **twelve** NEEs substantiate the Complaint's allegations and corroborate that Defendants subjected Plaintiffs to the same Illegal Policies as NEEs who remain unaware of this case. **Exhibits C-N.** The Court should authorize Notice because Plaintiffs have surpassed the "modest factual showing" to warrant Notice to these NEEs.[27]

### 3. Plaintiffs are "Similarly Situated" to Other Non-Exempt NEEs

Plaintiffs stand similarly situated to other NEEs who Defendants (1) paid on a non-exempt basis; and (2) subjected to the Illegal Policies. "To establish that employees are similarly situated, a Plaintiff must show that they are similarly situated with respect to their job requirements and with regard to their pay provisions. The positions need not be identical, but similar."[28] Texas District Courts have formulated the similarly situated analysis as requiring Plaintiffs to:

> . . . make a minimal showing that: (1) there is a reasonable basis for crediting the assertion that aggrieved individuals exist; (2) those aggrieved individuals are similarly situated to the Plaintiff in relevant respects given the claims and defenses asserted; and (3) those individuals want to opt in to the lawsuit.[29]

---

[24] *See, e.g., Matlock v. O-Tex Pumping*, LLC, No. MO-15-CV-75, 2015 WL 12910554 (W.D. Tex. Dec. 4, 2015) (granting conditional certification based on complaint's allegations and sworn statements).

[25] *Sperling*, 118 F.R.D. at 407; *see also Church v. Consolidated Freightways, Inc.*, 137 F.R.D. 294 (N.D. Cal. 1991),

[26] *Belcher v. Shoney's Inc.*, 927 F. Supp. 249, 251 (M.D. Tenn. 1996).

[27] *Realite v. Ark Restaurants Corp.*, 7 F. Supp. 2d 303, 306 (S.D.N.Y. 1998).

[28] *Barnett*, 2002 WL 1023161, at *1 (internal quotation marks and brackets omitted) (quoting *Tucker v. Labor Leasing, Inc.*, 872 F. Supp. 941, 947 (M.D. Fla.1994)); *see also, Dybach v. State of Fla. Dept. of Corrections*, 942 F.2d 1562, 1567-68 (11th Cir. 1991).

[29] *Maynor v. Dow Chemical, Inc.*, 2008 WL 2220394, at *6 (S.D. Tex., May 28, 2008) (referencing *Prater v. Commerce Equities Mgmt. Co.*, 2007 WL 4146714, at *4 (S.D. Tex. Nov. 19, 2007); *Simmons v. T-Mobile USA, Inc.*, No. H-06-1820, 2007 WL 210008, at *5 (S.D. Tex. Jan. 24, 2007)),

While job duties have relevance to conditional certification in ***misclassification*** cases, differences in job duties are largely irrelevant to conditional certification where a Defendant subjects non-exempt workers to a common discriminatory policy such as the Illegal Policies.[30] The proposition of the cases cited for this legal proposition acknowledge the Supreme Court's pronouncement that Notice may be authorized under § 216(b) because "[t]he judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity."[31] The Court should follow the precedent of the many Courts throughout the country that routinely grant conditional certification to groups of non-exempt workers, made up of multiple job positions from multiple locations, in nearly identical situations to those present in this case.[32]

Plaintiffs have shown that all NEEs are substantially similar in relevant respects through their substantial allegations and sworn statements exposing that all NEEs (1) received pay on a non-exempt basis; (2) regularly worked over 40 hours per week; and (3) were subjected to the same Illegal Policies that denied overtime for all overtime hours worked or at the legally required rate.

---

[30] *Behnken v. Luminant Min. Co., LLC,* 997 F.Supp.2d 511, 522 (N.D.Tex.2014) (rejecting defendant's argument that differences job duties made conditional certification inappropriate and certifying class of hourly non-exempt workers); *Aguilar v. Complete Landsculpture, Inc.,* No. 3:04–CV–0776 D, 2004 WL 2293842, at *4 (N.D.Tex. Oct. 7, 2004) (rejecting defendant's argument that differences in job duties made conditional certification inappropriate and conditionally certifying class of hourly paid workers paid pursuant to a common "block rate" pay scheme ); *Crain v. Helmerich & Payne Int'l Drilling Co.,* No. CIV. A. 92–0043, 1992 WL 91946, at *3 (E.D.La. Apr.16, 1992) (rejecting defendant's argument that differences in places of work and job duties made conditional certification inappropriate and conditionally certifying class of hourly paid workers performing non-exempt work);

[31] *Hoffmann-La Roche*, 493 U.S. at 170.

[32] *See Carden v. Scholastic Book Clubs, Inc.*, No. 2:10-cv-1112-NKL, 2011 WL 2680769 (July 8, 2011)(citing to *Davis v. NovaStar Mortg., Inc.*, 408 F. Supp. 2d 811 (W.D. Mo. 2005) (granting company-wide conditional certification of all nonexempt call center employees regardless of specific title or location); *Speer v. Cerner Corp.*, No. 14-204-cv-W-FJG, 2016 WL 1267809 (March 30, 2016) (granting conditional certification of non-exempt persons from 120 business units in 32 states regardless of job title or location); *Donohue v. Francis Servs., Inc.*, No. 04-170 2004 WL 1161366 (E.D. La. May 24, 2004) (rejecting defendant's argument that the "different job descriptions, duties, pay rates, pay scales pay practices and/or work locations" made conditional certification inappropriate and granting conditional certification of multiple positions at multiple locations); *Argo v. Precision Drilling Company, LP*, No. 4:15-cv-604, 2015 WL 9319233 (S.D. Tex. Dec. 12, 2015) (rejecting defendants' argument that plaintiffs had to show policy applied across company locations and job categories and granting companywide certification of four job categories at all of defendants' locations); *Thomas v. HCC-High Capacity Coil, LLC*, No. 2:14-cv-17, 2014 WL 4063981 (S.D. Tex. July 29, 2014) (granting companywide conditional certification to all "non managerial field personnel" at all of defendant's locations based on the declarations of two individual "operators" who worked in one location).

Factual Background, §§ II A-C *supra*. The early evidence shows that all NEEs are paid on a non-exempt basis and do not receive overtime due to the uniform Illegal Policies applied to them all.[33]

IV.     **RELIEF SOUGHT: CONDITIONAL CERTIFICATION, ISSUANCE OF NOTICE TO POTENTIAL PLAINTIFFS, AND DISCLOSURE OF NAMES AND ADDRESSES**

The FLSA's collective action mechanism serves an "important remedial purpose."[34] While courts have wide discretion to implement notice, they must ensure they exercise this discretion to further "the FLSA's broad remedial purpose by ensuring that as many potential plaintiffs as possible [are informed] of the collective action and their right to opt-in."[35] In "order for the FLSA to serve its remedial function, putative class members *must actually become aware* of their right to opt in."[36] Determining "what constitutes fair and proper notice [is] based **on the facts of each case**."[37]

Plaintiffs seek approval of the attached Notice (Exhibit A) and Consent (Exhibit B); and a sixty-day opt-in period. Plaintiffs also seek an Order: (1) requiring Defendants to disclose the names, addresses, e-mail addresses, and telephone numbers—in useable electronic form to reduce delay in sending out notices—within three (3) days from the entry of an Order; and (2) permitting Plaintiffs to send notice by mail, text and email to ensure the class members actually receive notice. Plaintiffs submit a proposed Order summarizing these requests for court approval as **Exhibit O**.

---

[33] Although not a statutory requirement, a factor some courts consider in Notice determination is whether similarly situated individuals exist who desire to opt-in and who should be given Notice of their right to do so. *Dybach*, 942 F.2d at 1567-68. The fact that approximately **thirty** additional individuals have elected to join the case—in addition to the Named Plaintiffs—without the benefits of Notice evidences this fact. Plaintiffs also identify, by name, other individuals who worked under the same conditions and pay provisions, who worked more than 40 hours without receiving overtime for all hours worked or at the legally required rate, and who Plaintiffs believe would join this action if made aware of it through supervised Notice. *Id.* ¶ 7. Because Plaintiffs have demonstrated that similarly situated individuals exist that desire to join the suit (or would desire to join the suit upon receiving Notice), Plaintiffs have easily surpassed their burden to justify Notice to Potential Plaintiffs.

[34] *Gunn v. NPC Int'l, Inc.*, 625 Fed. Appx. 261, 263 (6th Cir.2015) (internal citation omitted).

[35] *Stuven v. Texas de Brazil (Tampa) Corp.,* No. 8:12–CV–1283, 2013 WL 610651, at *5–6 (M.D. Fla. Feb. 19, 2013) (emphasis added) (quoting *Simmons v. Enterprise Holdings, Inc.*, No. 4:10CV00625 AGF, 2011 WL 1304732, at *1 (E.D. Mo. Apr.6, 2011); *Mowdy v. Beneto Bulk Transport*, No. C 06–05682, 2008 WL 901546, at *9 (N.D. Cal. March 31, 2008).

[36] *Kidd v. Mathis Tire and Auto Serv., Inc.*, No. 2:14–cv–02298, 2014 WL 4923004, at *2-3 (W.D. Tenn. Sept. 18, 2014) (rejecting defendant's argument the reminder notice would encourage individuals to join lawsuit and granting request to send reminder notice because it "function[ed] primarily to inform putative class members of their rights).

[37] *Stuven*, 2013 WL 610651, at *6 ("[T]he better course is to determine what constitutes fair and proper notice based on the facts of each case.") (quoting *Simmons v. Enterprise Holdings, Inc.*, No. 4:10CV00625 AGF, 2011 WL 1304732, at *1 (E.D.Mo. Apr. 6, 2011).

Plaintiffs seek email and text message notice to ensure that Plaintiffs <u>actually receive notice</u>. An acute need exists to send notice by text message because the nature of the NEEs' position prevents them from receiving "U.S. mail in a timely manner—if at all" because NEEs "work in remote locations far away from home … for days and even weeks at a time." Exhibits C-N, ¶ 8. Courts order text message notice in similar cases involving oilfield workers because text message notice "increase[s] the chance of the class members receiving and reading the notice, especially … [where they] may be away from their homes and addresses … for weeks or months at a time."[38]

Courts have increasingly authorized notice by text message in other contexts because text message communication "is likely to be a viable and efficient means of communicating with many prospective members of [a] collective action."[39] Moreover, text message notice is particularly important in a case like this one "because it facilitates notice to class members who [like many NEEs in this case] may have changed addresses before the opt-in period."[40]

A recent Pew Research Institute study corroborates that sending notice by text message is needed in this and other cases. The study found that (1) approximately 36 million Americans move each year; (2) 10% of U.S. adults have cell phone numbers that don't match the state they live in;

---

[38] *Landry v. Swire Oilfield Servs.*, No. 16-621, 2017 WL 1709695, at *39-40 (D.N.M. May 2, 2017) ("[C]ommunication via email and text message will "increase the chance of the class members receiving and reading the notice," especially because class members likely are "dispersed to various wellsites around the country and may be away from their homes and addresses of record for weeks or months at a time."); *Dempsey v. Jason's Premier Pumping Services, LLC*, No. 1:15-cv-703, 2015 WL 13121134, at *2 (D. Colo. Nov. 11, 2015) (granting text message notice due "to the fact that workers in the oil and gas industry travel frequently and are away from their homes for long periods of time"); *McGarry v. Chemix Energy Servs., LLC*, No. 2:15-cv-496 (S.D. Tex. July 19, 2016) (granting notice by text message in cases involving oilfield workers); *Mahrous v. LKM Enterprises, LLC*, No. 16-104141, 2017 WL 2730886 (E.D. La. June 26, 2017) (observing that "multiple courts in this District have ordered production in similar case and granting notice by text message because it would facilitate notice...") (collecting cases); *Louie Deschamps v. Nova Hardbanding*, No. 2:17-cv-493 (July 7, 2017).

[39] *Avendano v. Averus, Inc. et al.*, No. 14-cv-01614-CMA-MJW, Doc. No. 99 (D. Colo Oct. 26, 2016) ("Given the undisputed transient nature of the class and Plaintiff's assertion that text messaging is the most reliable form of communication, the Court finds that notification by text message is likely to be a viable and efficient means of notifying many prospective members of this collective action.").

[40] *Escobar v. Ramelli Group, L.L.C.*, No. 16-15848, 2017 WL 3024741 (E.D. La. July 17, 2017) (approving notice by text message "because it facilitates notice to class members who may have changed addresses before the opt-in period."); (citing to *Mahrous v. LKM Enterprises, LLC,* No. 16-10141 (E.D. La June 26, 2017) ("[P]laintiffs contend that text messages contend that text messages because putative class members may have changed addresses during the pendency of this litigation. Multiple courts in this District have ordered the production of telephone numbers in similar cases…. Access to telephone numbers will facilitate notice and the Court orders defendants to produce them.") (citing cases).

and 40% of urban dwellers have a number that doesn't match the city they live in.[41] This phenomenon and unreliable mailing addresses have led courts to determine that "email address and telephone numbers serve as the most reliable method of communication," because "traditional methods of communication via mail and land line telephone have quickly become obsolete."[42] The Court should follow suit in order to account for the realities of our modern society, "fall "in line with what has been approved in other FLSA collective actions,"[43] and ensure Notice is sent through the most "viable and efficient means of notifying many prospective class members of this action."[44] Granting text message notice would accord with the overwhelming weight of recent authority regarding the issue.[45]

## V. CONCLUSION

---

[41] http://www.pewresearch.org/2016/08/01/moving-without-changing-your-cellphone-number-a-predicament-for-pollsters/.
[42] *Irvine v. Destination Wild Dunes Mgmt.*, Inc., 132 F.Supp.3d 707, 711 (D.S.C. 2015).
[43] *Eley v. Stadium Grp., LLC*, Civil Action No. 14–cv–1594 (KBJ), 2015 WL 5611331, at *4 (D.D.C. Sept. 22, 2015) (citing *Bhumithanarn*, 2015 WL 4240985, at *5); *Dempsey v. Jason's Premier Pumping Services, LLC*, No. 1:15-cv-703, 2015 WL 13121134, at *2 (D. Colo. Nov. 11, 2015); *Regan v. City of Hanahan*, 2017 WL 1386334, 2:16-cv-1077, at *3 (D.S.C. Apr. 17, 2017); *Martin v. Sprint/united Mgmt. Co.*, No. 15–CV–5237, 2016 WL 30334, at *19 (S.D.N.Y. Jan. 4, 2016); *Bhumithanarn v. 22 Noodle Mkt. Corp.*, No. 14-cv-2625, 2015 WL 4240985, at *5 (S.D.N.Y. July 13, 2015); *Vasto v. Credico (USA) LLC*, 2016 WL 2658172 (S.D.N.Y. May 5, 2016) (same); *Lynch v. Dining Concept Group, LLC, Inc.*, No. 2:15-cv-580, 2015 WL 5916212 (D.S.C Oct. 18, 2015); *McGarry v. Chemix Energy Servs., LLC*, No. 2:15-cv-496 (S.D. Tex. July 19, 2016) *Spallone v. Soho University, Inc.*, No. 4:15-cv-1622 (D.S.C. Feb. 9, 2016); *Chamorro v. Bahman Ghermezian*, No. 12-cv-8159 (TPG), ECF No. 17 ¶ 5 (S.D.N.Y. Feb. 25, 2013).
[44] *Avendano v. Averus, Inc. et al.*, No. 14-cv-01614, Doc. No. 99 (D. Colo Oct. 26, 2016) ("Given … Plaintiff's assertion that text messaging is the most reliable form of communication, the Court finds that notification by text message is likely to be a viable and efficient means of notifying many prospective members of this collective action.").
[45] *Irvine v. Destination Wild Dunes Mgmt.*, Inc., 132 F.Supp.3d 707, 711 (D.S.C. 2015); *Eley v. Stadium Grp., LLC*, Civil Action No. 14–cv–1594 (KBJ), 2015 WL 5611331, at *4 (D.D.C. Sept. 22, 2015) (citing *Bhumithanarn*, 2015 WL 4240985, at *5); *Dempsey v. Jason's Premier Pumping Services, LLC*, No. 1:15-cv-703, 2015 WL 13121134, at *2 (D. Colo. Nov. 11, 2015); *Regan v. City of Hanahan*, 2017 WL 1386334, 2:16-cv-1077, at *3 (D.S.C. Apr. 17, 2017); *Martin v. Sprint/united Mgmt. Co.*, No. 15–CV–5237, 2016 WL 30334, at *19 (S.D.N.Y. Jan. 4, 2016); *Bhumithanarn v. 22 Noodle Mkt. Corp.*, No. 14-cv-2625, 2015 WL 4240985, at *5 (S.D.N.Y. July 13, 2015); *Vasto v. Credico (USA) LLC*, No. 15-Civ-9298, 2016 WL 2658172 (S.D.N.Y. May 5, 2016) (same); *Lynch v. Dining Concept Group, LLC, Inc.*, No. 2:15-cv-580, 2015 WL 5916212 (D.S.C Oct. 18, 2015); *McGarry v. Chemix Energy Servs., LLC*, No. 2:15-cv-496 (S.D. Tex. July 19, 2016) *Spallone v. Soho University, Inc.*, No. 4:15-cv-1622 (D.S.C. Feb. 9, 2016); *Chamorro v. Bahman Ghermezian*, No. 12-cv-8159 (TPG), ECF No. 17 ¶ 5 (S.D.N.Y. Feb. 25, 2013); *Mahrous v. LKM Enterprises, LLC*, No. 16-104141, 2017 WL 2730886 (E.D. La. June 26, 2017); *Owens v. GLH Capital Enterprise, Inc.*, No. 3:16-CV-1109, 2017 WL 2985600 (S.D. Ill. July 13, 2017); *Escobar v. Ramelli Group, L.L.C.*, No. 16-15848, 2017 WL 3024741 (E.D. La. July 17, 2017); *Calvillo v. Bull Rogers, Inc.*, No. 2:16-cv-919, ECF 43 (D.N.M. July 25, 2017); *Deschamps v. Nova Hardbanding, LLC*, No. 2:17-cv-493, ECF 15 (D.N.M. July 28, 2017).

Plaintiffs have presented detailed allegations and sworn statements concerning their work with Defendants that identifies two uniformly applied policies that deprived other NEEs (1) overtime for overtime all overtime hours worked; and (2) overtime at the legally required rate. Because Plaintiffs have met their burden of showing that similarly situated individuals exist, the Court should enforce the FLSA's collective action provisions and grant this Motion.