## 28 U.S.C. § 1746 DECLARATION AND CONSENT OF MIKE DARLING IN SUPPORT OF PROCEEDING AS A COLLECTIVE ACTION

I am over the age of 18 and am competent to testify to the facts in this declaration from my personal knowledge and experience. I make this declaration based upon personal knowledge and, if sworn as a witness, could and would testify competently to the facts set forth below:

1. Byrd Oilfield, LLC ("Byrd") employed other workers and I to perform manual and technical labor to help provide casing services to customers at jobsites (collectively, "Non-Exempt Employees" or "NEEs"). I worked for Byrd as an NEE, including as a Operator, from approximately 1999 to February 2016. During my employment I worked at various job sites throughout Texas, Oklahoma and New Mexico. Based on my employment with Byrd, I have personal knowledge and experience with Byrd's procedures and policies for compensating its NEEs and the duties and hours required to work in that capacity.

2. My primary job as a NEE was to help perform casing services for Byrd's customers at various job sites. Byrd did not pay other NEEs or I a guaranteed salary or sum of money each week, but rather paid us on a non-exempt basis.

3. Byrd paid from some of the work I performed based on the amount of pipe I laid or the amount of jobs/tasks I completed ("Piece Rate Pay"). While Byrd may have records, such as job tickets or customer invoices, that reflect a fraction of the hours I worked on a Piece Rate Pay basis, it did not track or count all of the hours I worked on that basis to determine the overtime hours I worked during each workweek of my employment.

4. Byrd also failed to pay me overtime at the proper rate because it failed to include all of my pay into the regular rate to calculate my overtime compensation. In fact, Byrd categorically failed to include any compensation I earned ("Additional Pay")—other that Piece Rate Pay or hourly pay—to calculate overtime. While Byrd paid me 1.5 times my hourly or Piece Rate Pay for the overtime hours it managed to count and pay me, it excluded all Additional Pay that other NEEs and I earned, including non-discretionary bonus, safety bonus, performance, and per diem pay (collectively, "Additional Pay") from the regular rate to calculate overtime.

5. Based on my experience working for Defendants, I understand that over 200 NEEs who worked under the same conditions as I did during my employment. These NEEs were non-exempt employees that were not guaranteed a minimum rate of pay each week that were required to work overtime hours. These individuals suffered from the same company policies as I did during my employment, including (1) not receiving payment for all hours worked when Byrd paid us on a Piece Rate Pay basis; and (2) not receiving proper overtime at the correct rate when we received Additional Pay.

6. The basis of my belief and knowledge of these policies is that I (1) observed other

NEEs work well in excess of 40 hours per week that performed similar duties to those I performed during my employment; and (2) had conversations with many of my fellow NEEs who talked to me about how Byrd paid them during their employment. The duties, hours, and pay policies/practices applicable to NEEs did not depend on the geographic area or region we worked in, but were rather a product of working as NEEs for Defendant. Byrd specifically violated the rights of all NEEs who received (1) Additional Pay because of Byrd's categorical exclusion of all Additional Pay—other than hourly or Piece Rate Pay—from the regular rate to calculate overtime; and (2) Piece Rate Pay because of Byrd's failure to track or count all hours we worked to determined the overtime hours we worked each week.

7. I believe other individuals would join this case if they were aware of its existence. I do not presently recall the names, telephone numbers, and addresses of all of the individuals with whom I was familiar while working for Byrd; however, I believe Jason Walker and Brian Walker would be eligible to join this case (or may have done so already) or would be eligible to do so if they knew of its existence and were not afraid of retaliation.

8. As oilfield workers, other NEEs and I often worked in remote locations far away from our homes for extended periods of time. I would often work, eat, and sleep at or near job sites which are not near my home for days and even weeks at a time. This work schedule made it difficult for my coworkers and I to regularly receive regular U.S. mail in a timely manner—if at all. Much of my communication with my friends and family, as well as with my lawyers has been through email, text, and calls on my cell phone. I have observed many of my co-workers (whether working for Byrd or for other oilfield service companies) staying in contact with their friends and family the same way I do—through email, text and their cell phones from oilfield jobsites. Because of the nature of our jobs, I believe that it would be helpful to send notice by both email and text messages—in addition to traditional mail—to ensure that other NEEs eligible to join this case receive timely notice about their right to pursue their unpaid overtime claims.

**I declare under penalty of perjury that the foregoing is true and correct.**

**Executed on** ___7/28/2017___ .

DocuSigned by:

_Mike Darling_
19703B8E04E1443...

MIKE DARLING